Okay. There is a threshold question that this panel needs to resolve in terms of which of two cases controls this court's jurisdiction over the authority to review the general counsel's opinion in this case. Those cases are Splain versus the secretary and paralyzed veterans versus the secretary. Congress defined the rule as an agency statement of particular applicability. Why don't we start with the statute, if you don't mind, because your suggestion to us is that we have two cases that are, in your view, in confusion or conflict with each other, both of which really pertain to what the statute covers. So why don't we actually start with the statute and then you can tell me which of the two cases seem most faithful to the statute as a starting point. What do you think the statute tells us about this? The statute contemplates that this court has jurisdiction to deal with substantive rules of general applicability adopted as authorized by law. The general counsel's opinion is authorized by law. 5252A1D is the controlling provision in the statute. I believe that this court's decision in Splain versus West correctly interprets that a general counsel's opinion qualifies under that definition of a rule. Sorry, are you saying that you think this presidential GC letter is a substantive rule? It is an interpretable rule. Okay, it's an interpretable. All right. But it is thereby a substantive rule, not a substantive rule that requires notice and comment, but a substantive rule that, as an interpretative rule, is within the ambit of the statute and gives this court authority to review. Is there any difference between the general counsel opinions in the two cases, Splain and paralyzed veterans, that might be a basis for saying both of those decisions could be correct, or are we really in a situation where they're just flat-out inconsistent with each other and we need to figure out which one is going to govern? I have struggled mightily to see that there is some difference, but I cannot. In Splain, they were interpreting a statute, and the court found that they were interpreting a statute. In PVA, they were asked by the board to interpret the provisions of 1151. I believe that they did, and they were required to, in order to answer the questions that were posed by the board. The panel in PVA never reached the merits because they said that they did not have jurisdiction. But what about your claim here? Are you making a challenge to the general counsel's legal interpretation or to the application of that legal interpretation to Mr. Snyder's particular fee agreement? The former and not the latter, because the general counsel's opinion does not apply to Mr. Snyder's case, although it is the basis for that opinion. That general counsel's opinion, under the provisions of 7104C, the board would be bound to follow that in applying it to Mr. Snyder's, well, actually it's Mrs. Beck's, appeal that she has been allowed to be, we believe, improperly substituted in or as an accrued benefit claim. Is it your position that, I guess, Mr. Snyder could win in that appeal on a ground that the general counsel's opinion simply doesn't apply to this particular case? If the interpretation made of 5904D as an accrued benefit, excuse me, the attorney fees required to be paid under 5904, as interpreted by the general counsel's opinion, constitutes an accrued benefit, then Mr. Snyder would prevail in the appeal only if this court invalidated that interpretation and found that that was a misinterpretation. Therefore, it is dispositive, in my judgment, of the appeal that's pending before the board. I also believe that the appeal pending before the board based upon the state of the law at the time of Mr. Beck's death rendered that appeal moot and was properly dismissed originally by the board based upon his death. Therefore, that proceeding should be over and the VA should be required by law to comply with the provisions of 5904 and pay the fee that they withheld to Mr. Snyder. They should pay Mr. Snyder $41,920, which is 20% of the benefits that this veteran got, despite the fact that he actually withdrew from representation in the case only 10 months after initiating it and with only having written basically a two-page letter on behalf of the veteran. And then the veteran went on for two years to prosecute his case to successful completion, and now Mr. Snyder swoops back in and would like to take 20%, i.e., $40,000 of the veteran's benefit without having done any work towards the successful completion of that case. That's what you're advocating for today, Mr. Carpenter? It doesn't seem like a position that I'm surprised to see you standing at the podium today. Go ahead. With respect, Your Honor, I do not believe that's a fair characterization of what has happened in this case. This court is not permitted to examine the facts or how those facts were applied. That's certainly the first time I've ever heard you say that. Having been bludgeoned with that rule, I have to acknowledge its existence. However, Your Honor, in this case, the VA, notwithstanding the description of the facts as you described them, found that Mr. Snyder was entitled to that fee, and that question was on appeal by Mr. Beck at the time of his death. That appeal, or excuse me, that decision by the VA was the law of that case, and that case ended with the death of Mr. Beck. We are not here to argue the merits of whether or not Mr. Snyder was or was not entitled to that fee, or should, or the VA... No, we're here to decide whether or not the VA general counsel properly decided that his widow could go forward with that appeal. Well, I'm not quite sure that that's what the general counsel opinion decided, but that is the effect of this decision. What the general counsel's opinion decided was is that attorney fees, as a claim, constituted accrued benefits under the provisions of 5121a. They do not constitute accrued benefits because they are not periodic monetary payments. The periodic monetary payments were paid in full to Mr. Beck during his lifetime. Pursuant to the plain language of 5904d, 20% of those past due benefits were withheld and directed to be paid by the secretary to Mr. Snyder. Once that decision was made by the VA, that converted these funds to attorney fees and stopped those funds from being, or ever able to be considered again as periodic monetary benefits. The only way that 5121a is implicated in this matter is if, and only if, there was an entitlement to periodic monetary benefits. Attorney fees are not periodic monetary benefits. They are summed that by a statutory contract that was created by Congress are withheld from those periodic monetary benefits based upon a percentage of a contingent fee agreement for representation. That contingent fee agreement for representation was found valid by the VA and Mr. Snyder and Mr. Beck were both notified that that fee was payable by the VA to Mr. Snyder. The provisions of 5121a have been misinterpreted by the general counsel in this opinion to permit Mrs. Beck to then step into the shoes of Mr. Beck as though this were an accrued benefit. It is not an accrued benefit by definition. An accrued benefit is unambiguously defined by Congress as a periodic monetary benefit. Attorney fees simply are not. Can I ask, I don't think this has been raised here maybe just because this is the 502 appeal or maybe there's really no dispute, but do you have a dispute that Mrs. Beck can make the claim to the VA for the 41K or some part of it even though that money is no longer in the VA's possession but has been paid out already to Mr. Snyder? Am I right on the premise he has actually received that money? No, I do not believe he has received that money. Oh, I thought there was a description that the money was released to him. If that's the case, Your Honor, I'm sorry, I just don't recall specifically. But assuming that the money has been paid out, her claim can still... Not through the VA system, Your Honor, because she does not have standing as this court has repeatedly held... Apart from your argument about whether this is an accrued benefit. Well, I'm not sure apart from that argument. That argument is dependent upon 5904. The only way that she would be able to petition, as you're describing it, within the VA system is as an accrued benefit claimant. An accrued benefit claimant has to be seeking due and unpaid periodic monetary benefits. I guess I'm trying to ask a different question. Assume that what she is seeking is due and unpaid accrued benefits. Yes. Does the fact that that money has already been paid out by the department to somebody else, to Mr. Snyder, affect the... It all by itself changed the ability... I do not... Well, that's an interesting question. That's not really here. Because then the question would be, what authority does the VA have to then continue that proceeding when the only purpose of 5121a as an accrued benefit claimant is to pay the money to the survivor? They don't have the monies anymore. If they don't have the monies anymore, it would seem to me that that would be beyond the authority, the statutory authority granted by Congress to authorize the recovery of those monies by Mrs. Beck through the VA process. You're into your rebuttal time. Would you like to save the remainder? Yes, I would. Thank you. May it please the court. I'd like to start with the question of jurisdiction here and I'd like to start with Splain and PDA. Why don't you start with the statute instead? Let's do the statute... Doesn't this fall under 552a? Doesn't... Doesn't fall under 552a. Yes, because that's something over which our court has direct authority, right? If this were a general counsel opinion that were not issued in the function of the VA's quasi-adjudication, then yes, that would fall under. However, what PDA addressed and what we think is correct is that section 502... I want you to look at the statutory language. 552 says that we have authority... Well, actually, it's 502. It says we have the authority over anything in 552a-1 and in 552a-1d, it says substantive rules of general applicability adopted as authorized by law and statements of general policy or interpretations of general applicability formulated and adopted by the agency. Why isn't the VA counsel opinion exactly the latter? A statement of general policy or interpretation formulated and adopted by the agency. Because 552a-1 comes into play only through section 502, and section 502 has two sentences, the first which speaks to section 552a-1, the second which starts with however. However, if such review is sought in connection with an appeal brought under the provision of chapter 72 of this title, the provisions of that chapter shall apply rather than the provisions of chapter 7 of title 5. And this is where there is a distinction between SPLAIN and PVA. I want you to talk about the statute. I don't want to talk about SPLAIN or PVA. So this second sentence says, however, if review is sought in connection with appeal, doesn't that suggest that review could also be sought not in connection with appeal? And isn't that in fact the way 502 first sentence has typically been read? We have the ability to hear a direct challenge to something that falls under 552a-1 or 553. Isn't that right? Is that right, yes or no? I want to know if my understanding of 502 is right. Your Honor, respectfully, I don't think it is because there is a distinction between a general counsel's opinion, which is issued in response to a request from the board. All I'm asking you is, is it the case that we have direct review authority under an action by the secretary under 552a-1? Do we have direct review authority of an action by the secretary which falls under 552a-1? Yes or no? Yes, except where the appeal originates from in connection with an appeal brought under Chapter 72. And this is an important distinction because Splain assumed jurisdiction under the first sentence of 502. But this isn't a case brought under Chapter 72, correct? But PVA answered that. But this one isn't a case brought under Chapter 72, so your exception in the statute doesn't apply to this case, correct? PVA interpreted 502, including the second sentence, to include a direct appeal of a general counsel's opinion that was issued in response to a request from the board in a particular veteran's claim. Even if there is more than one reasonable interpretation of what Section 502 means or what the second sentence of 502 means, that is not a question for this panel because it was addressed explicitly by the court and PVA. PVA and Splain are arguably inconsistent with each other, which is why I've tried very hard to get you to focus on the statutory language, which you just keep refusing to do. You want to hide behind PVA, but you won't defend it in light of the language of the statute. And you've got a conflicting case that came out before PVA. So this is your problem. You need to tell me why the statute gives or doesn't give us review authority. You need to stop trying to hide behind a case because these two cases are in conflict. So do you have any justification for why this statute justifies your position? Yes, because the VA... When it's in its rule-making capacity and when it's advising the board in its adjudication of a particular veteran's claim, and that's what PVA addressed. It found that... I guess this is what I don't really get. The General Counsel issues what the General Counsel calls a precedential opinion, answering a couple of general legal questions. And what is it, 7104C? Is that the provision that says this actually binds the board in the future? How is that something other than a rule under 552A1D? The distinction is that rather than acting in its rule-making capacity, the VA was providing legal advice to the board on a pending appeal and a pending veteran's claim. And we recognize... If I could just clarify something. Are you saying there's two different categories of General Counsel precedential letters? Yes. There's one that is issued unrelated to any proceeding in front of the board, and then there's another kind that is related to a proceeding with the board. But I guess for me, the struggle I have is they have the same end result effect. It's true that one category of letters might directly impact the outcome of a proceeding before the board, but in the end, they're both binding on the agency. They are binding, but the distinction is how and why they originate. And I agree that there are other categories of General Counsel's opinions which are not issued in connection with adjudication of a particular veteran's appeal that would be directly reviewable by this court under 502. I guess it's not clear to me why the motivation for why the GC issued its precedential letter matters. It matters because this court... When they have the same effect. ...didn't reach the second sentence of 502, didn't opine as to its meaning, and as the Supreme Court has stated, where a case didn't directly confront a question before it or where questions of jurisdiction have been passed on in prior decisions sub salientio, the court should not consider itself bound in a subsequent decision. What about the Regulation 38 CFR 14.507, which actually lays out, I think pretty clearly, the two types of General Counsel opinions that Judge Chen was referring to. A says there are advisory-only opinions. They have to be designated as such. And B says there are precedential opinions, which have to be designated as such. And B goes on to say, any written legal opinion designated as precedential shall be considered by the Department of Veterans Affairs to be subject to the provisions of 5 U.S.C. 552A1. Again, Your Honor, the distinction... And this is what the court and PVA interpreted. And again, we acknowledge that there may be more than one reasonable interpretation of that second sentence of 502, but that was a matter for the panel and PVA, and they have reached that. The question of jurisdiction was not raised in Splain. I'm sorry, but that's not really true. The question of jurisdiction was raised. This is not a case that falls under, I think, any of the decisions that you cite for the quite accepted proposition that sub salientio rulings don't have binding effect when the matter comes up again. But this was not sub salientio. Splain expressly reaches a conclusion, and it's true that it didn't do so in the face of a contest on the issue, but the government's brief is explicit about it. Respondent does not disagree with the assertion that the general counsel's opinion may be reviewed under 502 as a 550PA1 matter. So it seems to me this is really not quite one of those sub salientio cases. I believe the reason that it is sub salientio is that, well, first of all, a party cannot find it sub salientio. I mean, literally it's not sub salientio, right? But Splain was silent as to the effect of that second sentence of 502, and so PVA is the only decision of this court to speak to what that second sentence of 502 means, and while acknowledging that it's not precedential when this exact issue was raised again in American Legion in 2008, that's what the panel there found, that the decision was squarely controlled by PVA. I'm well into my time, so I'd like to address any questions that the court may have as to whether it does exercise jurisdiction, the interpretation in the GC counsel's opinion. I'm curious about a side issue. I think that my understanding of the facts is pretty close to correct, if not correct, in terms of Mr. Snyder having accepted the case, worked for only a period of months, basically withdrew from representation. The case went on for a full two additional years before the Becks finally succeeded in their claim, and then he kind of swoops in at the end with his request for 20% of all the money they got. Why, out of curiosity, did the initial decision from, is it the board or the VA, whoever made the initial decision, did they consider all of this in deciding whether he was entitled to 20% or not? I know that this case ultimately is about whether she, his widow, has the right to appeal or whether the claim ended with his life, but I'm curious, what was the basis for the decision below to give him the $40,000 of the veterans' money? The initial opinion, and it's just that, it's just an initial opinion, not a final decision on the matter, found that there's basically two issues under 5904. Eligibility, meaning is this a VA agreement that's structured the way an agreement under 5904 must be? Is it capped at 20%? Was it actually signed by the veteran? That's eligibility, and the initial decision addressed eligibility. However, there's a second element of 5904 under C2 which permits for a reasonableness review, and that may be raised by the board directly or by party, and that was true at the time of the 2001 statute as well, and it's that second piece that allows for a reasonableness review and a reduction of fees where the fee is not reasonable or excessive. And is that where the agency actually asked Mr. Schneider to come in and justify what hours he had spent and what work he had done to warrant the $40,000? Yes, so that pending appeal. Okay, so that was what was pending when Mr. Beck died. That was pending when Mr. Beck died. I understand. And that is the claim, that pending claim, and in Mason v. Shinsinki, this court has held that a claim where there's a direct fee request and a challenge to that, that those are simultaneously contested claims. Mr. Beck was challenging that claim. When he died, the accrued benefits claim and statute allows his survivor to step into his shoes in a derivative claim and to step into the exact place. And we acknowledge that Congress did not speak in 5904 to what would happen on a veteran's death. And in 5121, the accrued benefits statute does not explicitly allow... Excuse me, 5121 explicitly allows an accrued claimant benefit to pursue a claim but doesn't speak to an attorney's fees question. In interpreting these two statutes, the general counsel correctly applied the canon of construction that if you could read both statutes to give effect to both, you should do so. And it found that an accrued benefits claimant would be able to bring a claim, a pending claim here, challenging reasonableness, just as it would any other pending claim. And the distinction that counsel is trying to make between periodic monetary benefit that's no longer being a periodic monetary benefit, that's really just a red herring because accrued benefits are periodic monetary benefits. The Veterans Court has addressed that in Nolan even when they're paid in a lump sum payment. It distinguishes those from payments that are only made in a lump sum like certain housing benefits or Nolan gives the example of certain auto purchase payments. But what Mr. Snyder is arguing here is that once the money is reserved as the potential attorney's fees, subject to a reasonableness challenge, that if the veteran dies, then the reasonableness challenge is out the window and it doesn't matter if the fee is excessive or unreasonable, the accrued benefits claimant can't step in. But again, under Mason, this court has said that a claim for money like this, one pot of money sought by an attorney on one side and a claimant on the other is a simultaneously contested claim. And there's no reason that Ms. Beck wouldn't be able to pursue this claim. Can I ask you before you sit down, can you get the money back from Mr. Snyder? Yes, there are provisions that allow for that. And again, even... Can I ask something now? When the board ruled back in 2003 that he had a service connection for his injury and was entitled to $200,000, was $160,000 paid out to him and then $40,000 held back? Yes, the $160,000 was paid. $40,000 was reserved. And where's the $40,000 now? The $40,000 is with the attorney. So it was paid out after he was deemed eligible but there hadn't yet been a ruling on whether it was reasonable? It was paid out after his death because the procedure is for any pending appeals where there's not a possibility for substitution under 5121 large A to be dismissed. And while there is then the possibility for a derivative claim by an accrued benefits claimant, this is an unusual situation. It was a case of first impression for the board. The RO, rather than waiting for the period in which Mrs. Bett could bring her derivative claim or reaching out to see if she was going to bring one, issued that money. But the best practice would have been to hold that payment to see if there was more than one party seeking entitlement to all or a portion of that money. Okay, thank you. Mr. Carpenter, you have some rebuttal time. And since the government went extra over by a minute, let's put three minutes of rebuttal time on it. Thank you, Erin. I believe that the representative of the VA has misstated the law. The initial decision on the fee was just that. It was a decision. It was not an opinion. And it was an opinion that the VA ultimately acted upon. There has also been a suggestion by the government that the issue of reasonableness was raised. Yes, the issue of reasonableness was raised, but it was raised in the notice of disagreement on the question of eligibility or entitlement to charge a fee. There is a specific statutory provision that requires the issue of reasonableness at that time to be raised directly to the board. The issue of reasonableness was never, during the life of Mr. Beck, raised to the board. The board had authority to sua sponte raise the issue. The board, during the lifetime of Mr. Beck, never sua sponte raised the issue of reasonableness. Mr. Carpenter, everything you're talking about now, I mean, this is good background information, but it's not related to what we have to confront and disappeal, is that right? It is tangentially related because the government has suggested that this case has a separate status relative to reasonableness, and it does not. This case is limited to the question of eligibility. And that question of eligibility was favorably decided and then acted upon, and those funds were distributed to Mr. Snyder. I thought we just have to figure out whether the GC's letter is permissible under the statute. And this relates to... Yes, is that right? Yes, Your Honor, but this relates to... We don't need to get into the story of what happened with Mr. Snyder's claim for these fees. It relates to the question of what is pending before the agency. What is this so-called derivative claim? No, Your Honor, but what is pending before you is whether or not this is or is not the attorney fee monies, an accrued benefit. It cannot be an accrued benefit. An accrued benefit, contrary to what the government said, is not a derivative claim in the sense that you get the right to a derivative claim. You only get the right to a derivative claim if there are periodic monetary benefits, due and unpaid. As you correctly observed, Judge Ginn, these monies were not due and unpaid. They were, in fact, paid. $140,000 to Mr. Beck, or excuse me, $160,000 to Mr. Beck and $40,000 to Mr. Snyder. That slate is done. There are no due and unpaid benefits under 5121A. And for the general counsel opinion to interpret 5904 to create accrued benefits is simply inconsistent with both statutes. Thank you very much, Mr. Carpenter. We thank both counsel for their arguments. The case is taken under submission. The Honorable Court will take a short recess. Thank you, Reggie.  We'll just leave that. We just go. Thank you.